United States District Court
For the Northern District of California

\*\* E-filed January 24, 2012 \*\*

NOT FOR CITATION

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| PATRICK GRANNAN, on behalf of himself and all others similarly situated,<br><br>    Plaintiffs,<br>v.<br>ALLIANT LAW GROUP, P.C.,<br>    Defendant.<br>_____/ | No. C10-02803 HRL<br><br>**ORDER GRANTING MOTION FOR FINAL APPROVAL OF SETTLEMENT AND GRANTING MOTION FOR ATTORNEY'S FEES AND COSTS**<br><br>**[Re: Dkt. Nos. 32, 35]** |

The plaintiff and class representative, Patrick Grannan, moves for Final Approval of the Stipulation of Settlement and Release ("Settlement Agreement") between the parties and for attorney's fees and costs. Defendant Alliant Law Group ("Alliant") filed Statements of Non-Opposition as to both motions. A third party, Cardservice International ("Cardservice") having previously filed a notice of lien against Grannan, objects to the settlement agreement. The matters were heard on November 1, 2011.

**I.    BACKGROUND**

Patrick Grannan brought this putative class action in June of 2010 against Alliant Law Group alleging violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 *et seq*. and seeking damages and injunctive relief. He claimed that Alliant, acting as debt collector for its creditor clients, had violated the TCPA by calling cell phones of individuals who had not supplied express prior consent to receive such calls, as required under the Act. Although plaintiffs

have not asserted any actual damages, the TCPA permits claimants to recover statutory damages in the amount of $500 per violation of the Act, and up to $1,500 per willful violation. 47 U.S.C. § 227(b). In addition, the TCPA permits claimants to seek injunctive relief to prevent future violations. Id. After filing its answer to the complaint, Alliant ceased its debt collection work. The parties conducted some discovery and then reached a tentative settlement.

Preliminary Approval of the Settlement and Certification of the Class

In May of 2011, the parties filed a joint motion for certification of the tentative settlement class and preliminary approval of the proposed settlement (Dkt. No. 21). That motion included the original Stipulation for Settlement and Release ("Settlement Agreement") and proposed notice procedures for notifying the purported class members of the settlement and instructing them how to file a claim or opt-out of the class. After the preliminary approval hearing, the court issued an interim order asking Grannan to submit a letter brief explaining whether the $8,500 incentive payment the parties proposed to give him as class representative was an appropriate amount (Dkt. No. 23). Plaintiff responded with a brief that requested an amended incentive payment to Grannan in the amount of $5,000.

The Settlement Agreement would completely resolve the claims brought against Alliant by Grannan, on behalf of himself and the preliminarily approved Settlement Class. The defendant agreed to certification of the settlement class and offered to pay the maximum limit, $1,000,000, under its insurance policy, and stipulated to an injunction that would prevent it from conducting similar violations should it recommence debt collection activities.

On June 22, 2011, this court certified the preliminary Settlement Class, preliminarily approved the Settlement Agreement, approved and directed a plan for giving notice to class members, appointed Class Counsel, and appointed the Claims Administrator ("Prelim. Approval Order") (Dkt. No. 25). The court also set deadlines for objecting to the settlement and for requesting exclusion from the Settlement Class. The court later granted the parties' stipulated request to extend the opt-out, objections, and claims period for those potential class members who could not be served with the requisite notice materials in the first instance (Dkt. No. 31).

2

The court held a final fairness hearing on November 1, 2011. The moving parties appeared at that hearing and were heard by the court. The court has also considered the only objection received in accordance with the Court's Prelim. Approval Order.

## II. JURISDICTION

This court finds that it has jurisdiction over the claims the members of the class asserted in this proceeding, personal jurisdiction over the settling parties (including all members of the settlement class), and subject matter jurisdiction to approve the Settlement Agreement filed with this court.

## III. MOTION FOR FINAL APPROVAL

A. <u>Final Certification of Settlement Class</u>

1. *Class Definition and Notice to the Class*

<u>Class Definition</u>: The parties agreed to certification of a Settlement Class generally defined as all persons within the United States to whom any telephone calls were made by Alliant or any of the other Released Parties between June 25, 2006 and June 22, 2011, the date of the Preliminary Approval Order, to such person's cellular telephone, paging service, specialized mobile radio service, other radio common carrier service or any service for which the called party is charged for the call, through the use of any automatic telephone dialing system which has the capacity to store or produce numbers (whether or not such capacity was used), including, but not limited to, an automated dialing machine dialer, auto-dialer or predictive dialer, or by the use of an artificial or prerecorded voice, without the called party's express consent. This definition is subject to exclusions based on people with personal or professional relationships to the defendants and all parties' counsel in this case, and people who validly excused themselves.

<u>Notice to the Class</u>:

This court preliminarily approved the parties' proposed notice procedure as it was laid out in the court's Order of June 22, 2011. Dkt. No. 25. The court is now satisfied that the notice procedure was carried out according to the applicable standards and that it has satisfied the requirements of the federal Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1715, and Fed. R. Civ. P. 23.

There were 137,891 potential class members in this action. Each individual was identified by a cellular phone number that appeared in Alliant's electronic database of collection calls made. Dkt. No. 46 ¶ 3 ("Vasquez Declaration"). The database also included the names, addresses, and business information that Alliant had for each individual. 108,246 of the cellular phone numbers were accompanied by names and addresses; these individuals were sent postcard-type notices with a summary of the Settlement Agreement and information about filing a claim. Of those 108,246, 33,017 postcards were returned as undeliverable, and of those 33,017, the Claims Administrator located updated addresses and sent new postcards to 12,604 individuals. Vasquez Dec. ¶¶ 9-10. The court granted an extension of time to file a claim or opt-out solely for those individuals whose postcards were originally returned as undeliverable. Dkt. No. 31. The Claims Administrator published a press release about the settlement through PR Newswire and in USA Today. Vasquez Dec. ¶¶ 7-8. In addition, it established a website dedicated to the case, where class members could access court filings and information about the case, look up deadlines for filing claims, and file a claim. Vasquez Dec. ¶ 11. Finally, the Claims Administrator set up a toll-free telephone number where class members could inquire about the Settlement and make a claim. Vasquez Dec. ¶ 12. The Claims Administrator received 2,965 phone calls, resulting in 994 claims filed. Id.

In total, the claims administrator received 1,986 claim forms. Of those, 979 were filed online, 994 through telephone support, and 8 through postal mail. Opt-outs had to be postmarked by October 15, 2011. One class member timely opted out, and five untimely opt-outs were received. According to plaintiff's counsel at hearing, all six of the class members who opted out will be excluded from the class.

    a. Notice Under the Class Action Fairness Act

The Class Action Fairness Act ("CAFA") requires defendants to send to the appropriate state and federal officials a copy of the complaint, notice of scheduled judicial hearings, proposed or final notifications to class members, proposed or final class settlements, any other contemporaneous agreements between the parties, any final judgments or notice of dismissal, and the names of class members if feasible. See 28 U.S.C. § 1715(b)(1-8). The court is satisfied that the notices were sent (See Dkt. No. 46 at 2).

      b.   Notice Under Fed. R. Civ. P. 23

The notice program satisfied both Fed. R. Civ. P. Rule 23(c)(2)(B) (requiring that the court provide "the best notice that is practicable under the circumstances") and 23(e)(1) (requiring court to "direct notice in a reasonable manner to all class members who would be bound by [settlement]"). In class action settlements, it is common practice to provide a single notice program that satisfies both of these notice standards. See David F. Herr, Annotated Manual for Complex Litigation § 21.31 (4th ed. 2005). In this case, postal mail was well suited for locating and notifying class members, since the violations by defendant arose out of auto-dialed telephone calls made to cellular telephones, which typically have a name and physical mailing address associated with them. The court reviewed and approved these notices before they were disseminated and found that they were written in plain language. The notice clearly stated the nature of the action; the class definition; the class claims, issues, and defenses; that class members could appear through counsel; when and how class members could elect to be excluded; and the binding effect of a class judgment on class members. See Fed. R. Civ. P. 23(c)(2)(B). It also informed class members of the amount of attorneys' fees requested by Class Counsel. Fed. R. Civ. P. 23(h)(1).

The Court concludes that the notice was reasonably calculated under the circumstances to apprise the Settlement Class of the pendency of this action, all material elements of the Settlement, the opportunity for Settlement Class Members to exclude themselves from, object to, or comment on the settlement and to appear at the Final Fairness Hearing. The notice was the best notice practicable under the circumstances, satisfying the requirements of Rule 23(c)(2)(B); provided notice in a reasonable manner to all class members, satisfying Rule 23(e)(1)(B); was adequate and sufficient notice to all Class Members; and, complied fully with the laws of the United States and of the Federal Rules of Civil Procedure, due process and any other applicable rules of court.

      2.   *Scope of Release*

The parties have agreed that upon entry of final approval of the Settlement Agreement, the Class Representative, Class Members, and their successors and assigns will have permanently released any and all of the Released Claims against any of the Released Parties, as set forth in the Settlement Agreement. See Settlement Agreement, pp. 8-9, 15-16. Pursuant to the release contained

in the Agreement, the Released Claims are compromised, settled, released, discharged, and dismissed with prejudice by virtue of these proceedings and this order. The Released Claims include any and all claims related to or arising out of the allegations of Alliant's TCPA violations stated in the complaint, and any other claims for TCPA violations that may be or become known to class members. In addition, class members agree to release any claims that arise out of or relate in any way to the administration of the Settlement. Id. ¶ 1.26.2.

### 3. *Final Certification of the Settlement Class*

The parties jointly moved the Court to resolve this case as a Settlement Class. In order to certify a Settlement Class, the requirements of Rule 23 must generally be satisfied and each are considered here. See Hanlon v. Chrysler Corp., 150 F.3d 1011, 1019 (9th Cir. 1998) (citing Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 613 (1997)). In assessing Rule 23 requirements in the settlement context, a court may consider that there will be no trial. See Amchem, 521 U.S. at 620 ("court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial.").

#### a. The Requirements of Rule 23(a)

For certification of a settlement class, Rule 23(a) requires: (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation. In granting preliminary approval of the Settlement Agreement, this Court held that the requirements of Rule 23(a) were satisfied and that "a class action is superior to other available methods for a fair and efficient adjudication of this controversy."

**Numerosity**. The class here, consisting of approximately 137,891 class members, is so numerous that joinder of all members is impracticable. Fed. R. Civ. P. 23(a)(1); see Hanlon, 150 F.3d at 1019.

**Commonality**. Further, this case involves common issues of fact and law for the class arising out of the TCPA violations committed by defendant Alliant. Fed. R. Civ. P. 23(a)(2).

**Typicality**. The claims of the Named Plaintiff are typical of the Settlement Class, and arise out of the TCPA violations committed by defendant Alliant. Fed. R. Civ. P. 23(a)(3).

**Adequacy**. And finally, with respect to legal adequacy, two questions must be resolved: (1) do the named plaintiff and Class Counsel have any conflicts of interest with other class members and, (2) have the named plaintiff and Class Counsel vigorously prosecuted the action on behalf of the class? See Hanlon, 150 F.3d at 1020. First, there are no known conflicts of interest between Grannan and Class Counsel and the remainder of the class. Importantly, the settlement makes all class members eligible for the same relief. See id. at 1021 (finding that categorizing class members into discrete groups eligible for different remedies poses significant conflicts of interest). Second, given that Alliant has gone out of business, and likely lacks the resources and assets to offer a larger benefit to class members after trial, the named plaintiff and Class Counsel have probably preserved the best possible payout for the class members by foregoing a trial, where Alliant's resources, namely, the insurance policy, might have been redirected to offset litigation costs. As such, the Named Plaintiff and counsel have fairly and adequately protected class interests. Fed. R. Civ. P. 23(a)(4).

Therefore, all of the requirements of Rule 23(a) are satisfied.

  b. The Requirements of Rule 23(b)(3)

For certification under Rule 23(b)(3), a class action must meet two additional requirements: (1) common questions must "predominate over any questions affecting only individual members;" and (2) class resolution must be "superior to other available methods of fair and efficient adjudication of the controversy." Amchem, 521 U.S. at 615; Fed. R.Civ. P. 23(b)(3).

**Predominance**. In this case questions of law or fact common to members of the Settlement Class concerning the TCPA violations committed by Alliant predominate over any questions affecting only individual members.

**Superiority**. To determine whether the superiority requirement is met, a court must consider what alternative means of adjudication are available. If no viable alternative to a class action is available, the class action is necessarily the superior method of adjudication. Local Joint Exec. Bd. of Culinary/Bartenders Trust Fund, 244 F.3d 1152, 1163 (9th Cir. 2001). Where, as here, plaintiffs' anticipated award is relatively small, "'[c]lass actions . . . may permit the plaintiffs to pool claims which would be uneconomical to litigate individually.'" Culinary/Bartenders Trust

Fund, 244 F.3d at 1163 (quoting Phillips Petroleum Co. v. Shutts, 472 U.S. 797, 809, 86 L. Ed. 2d 628, 105 S. Ct. 2965 (1985)). This Court determined in its Preliminary Approval Order that the requirements of Rule 23(b)(3) had been met, and no objectors have suggested otherwise.

Accordingly, all of the requirements of Rule 23(b)(3) are satisfied.

Finding the requirements of Rule 23(a) and 23(b)(3) satisfied, the court confirms and approves the Settlement Class certification.

B.  <u>Final Approval of the Settlement Agreement</u>

This court may approve the class action settlement after hearing and upon a finding that the settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(1)(C). Therefore, the question is "not whether the final product could be prettier, smarter, or snazzier, but whether it is fair, adequate, and free from collusion." Hanlon, 150 F.3d at 1027. Further, it is "the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness." Id. at 1026.

A settlement under Rule 23(e) requires that the Court balance a number of factors, including: (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout trial; (4) the amount offered in settlement; (5) the extent of discovery completed; (6) the experience and views of counsel; (7) the presence of a governmental participant; (8) the reaction of the class members to the proposed settlement; and (9) the absence of collusion in the settlement procedure. Churchill Vill., LLC v. Gen. Elec., 361 F.3d 566, 575 (9th Cir. 2004); Hanlon, 150 F.3d at 1026.

   1.  *The Strength Of The Plaintiff's Case*

In considering the strength of plaintiff's case, the stage of the proceedings and the amount of discovery completed are relevant factors in determining whether the settlement is fair, reasonable, and adequate. In re Warner Communications Sec. Litig., 618 F. Supp. 735, 741 (S.D.N.Y. 1985). Here, Class Counsel conducted some discovery to determine how many calls to cell phone numbers were made by Alliant (1,078,619 calls to 137,981 claimants). See Settlement Agreement ¶ F. Plaintiffs have not alleged any actual damages, and it appears that Class Counsel conducted no discovery to determine whether there were any actual damages. Counsel determined that Alliant's

8

insurance policy, totaling $1,000,000.00, was the sole source of funds from which plaintiffs could recover. Id. Although the TCPA contemplates an award of at least $500 in statutory damages per violation, the discovery conducted revealed that the amount of statutory damages warranted by the number of violations significantly exceeded Alliant's only available source of funds. Therefore, the parties considered it unnecessary to negotiate over "the other usual TCPA claims." See Dkt. No. 32, p. 12. Instead, the Settlement Agreement provides for an equal payment to each class member, irrespective of how many prohibited calls were received by each. Settlement Agreement ¶ J. Since defendant's limited available resources made further discovery into the nature of each class member's individual TCPA claims unnecessary, or at least impractical, the resulting uncertainty weighs in favor of the proposed settlement.

### 2. *The Risk, Expense, Complexity, and Likely Duration of Further Litigation*

As noted previously, further litigation in this case threatens to deplete plaintiffs' only source of recovery funds, Alliant's insurance policy, and risks leaving plaintiffs with less to recover, or nothing at all. If this settlement were not approved, further litigation before this court would be time consuming, complex, and expensive. The court reasonably anticipates further discovery, significant motion practice, including a motion for class certification. The likelihood of appeal would increase, no matter how the court ultimately rules, and the parties would have to face the expense, delays and uncertainties inherent in litigating an appeal. Accordingly, this factor supports approval of the Settlement Agreement.

### 3. *The Risk of Maintaining Class Action Status Throughout Trial*

The likelihood that the plaintiff class could survive through trial has not been considered by this court, except insofar as such a consideration is an element of preliminarily approving the class for settlement purposes. In its preliminary certification of the class for settlement purposes, the court expressed no skepticism that the class could be maintained throughout trial. However, in light of the limited discovery taken so far in this case, and the potential that much more extensive discovery could result in a set of plaintiffs less well suited for certification as a class, the uncertainty of this factor weighs in favor of approving the Settlement Agreement.

### 4. *The Amount Offered in Settlement*

9

The fourth factor that a court must consider is the amount offered in settlement. In weighing this factor, the Court may also consider the difficulties that a plaintiff would have in proceeding with litigation. See In re Mego Fin. Corp. Sec. Litig., 213 F.3d 454, 459 (9th Cir. 2000). Alliant has provided $1,000,000.00 to pay for all costs and fees associated with this action, as well as for payment of claims to the plaintiff class. In addition, Class Counsel has obtained a stipulated injunction that would prevent defendant from committing further TCPA violations. Under the TCPA, the plaintiffs are entitled to recover $500 in statutory damages for each violation, and up to treble damages for willful violations. See 47 U.S.C. 227(b)(3). However, as has been previously noted, Alliant will be unable to provide the full compensation for these statutory violations whether the parties settle now or move on to further litigation. The offer before the court is the best offer the plaintiffs will get. This court has yet to rule on plaintiff's motion for attorney's fees. Assuming that the court grants plaintiffs their costs and Class Counsel a reasonable award of attorney's fees, the relief to each class member will be in the range of $300-325, less than what the TCPA provides for a negligent violation, yet considerable when aggregated over the 1,986 opt-in class members. See In re Mego Fin. Corp. Sec. Litig., 213 F.3d at 459. Therefore, this factor weighs in favor of approving the Settlement.

5. *The Extent of Discovery Completed*

When litigation has proceeded to the point where the parties have a "clear view of the strengths and weaknesses of their cases," this factor supports approval of a settlement. Young v. Polo Retail, LLC, 2007 WL 951821, *4 (N.D. Cal. Mar. 28, 2007). Class counsel admits that the parties did not complete extensive discovery before coming to a tentative settlement in this case. Plaintiffs subpoenaed Alliant's call record database to locate calls made to cell phone numbers in violation of TCPA. Further, they determined that Alliant's insurance policy was the only source of funds to pay for a recovery for plaintiffs. But, plaintiffs argue (and defendant does not oppose) that even this limited discovery gives them a clear view of the strengths and weaknesses of the case. While more extensive discovery could have been done, the information currently before the court suggests that the Settlement represents a substantial benefit to plaintiffs, especially when compared

with the risks of further litigation. Thus, this factor weighs in favor of approving the Settlement Agreement.

### 6. *The Experience and Views of Counsel*

In considering the experience and views of counsel, the Court finds that the settlement in this case is the product of arm's length negotiations that were conducted by capable counsel who are experienced in class action litigation. Counsel for both sides believe that the Settlement reflects the relative strengths and weaknesses of the parties' respective claims and defenses, as well as the risks presented in continuing the litigation. The experience and views of counsel weigh in favor of approval.

### 7. *The Presence of a Governmental Participant*

The court, in requiring CAFA notice to be sent to various governmental entities, intended to provide an opportunity for comment or objection by such entities. However, after notice was sent to the Attorney General of the United States and to the attorneys general of the fifty states, no governmental entity sought to participate in the settlement proceedings by objection or comment. Because numerous governmental agencies were given notice of the settlement and have not objected, this factor weighs in favor of the settlement.

### 8. *The Reaction of the Class Members to the Proposed Settlement*

The next factor that the court must consider is the reaction of the class to the proposed settlement. See Hanlon v. Chrysler Corp., 150 F.3d 1011, 1026 (9th Cir. 1998). As mentioned previously, only six class members have sought to opt out of the Settlement Agreement, and no class member has objected.[1] Even when there are objectors, courts will routinely approve a settlement. See, e.g., In re Broadcom Corp. Sec. Litig., No. SACV 01-275 DT (C.D. Cal. Sept. 12, 2005) (approving a settlement with 4 objectors in a class of 325,000). As there are no valid objections, factor weighs in favor of approving the settlement.

### 9. *The Absence of Collusion in the Settlement Procedure*

---

[1] The only objection received was submitted by Cardservice, a third party lienholder that argues that it is entitled to the incentive payment to be awarded to Patrick Grannan. Dkt. No. 45. As discussed in Section III.C, *infra*, Cardservice is not a class member and its submission to the court will not be considered a valid objection for the purpose of finally approving the Settlement Agreement.

11

This court will now consider the procedure through which the settlement was reached in order to satisfy itself that the settlement was not the product of collusion. See Young, 2007 WL 951821, at *3; Churchill Vill., 361 F.3d at 576-77. Here, the parties participated in an early ADR phone conference and decided to participate in mediation. However, before the hearing could be held, they reached a tentative settlement. See Dkt. No. 18. That agreement was the product of arms-length negotiation lasting about nine months by the time the parties moved for preliminary approval of the settlement. The amendments to the Settlement Agreement were in accordance with this court's interim order following the filing of the motion for preliminary approval of the settlement. Accordingly, the Court finds that the settlement procedure was without collusion; this factor weighs in favor of approving the Amended Settlement.

### C. Payment to the Class Representative and Cardservice's Lien

Under the Settlement Agreement, Patrick Grannan, the class representative, is entitled to an incentive payment of $5,000.00. Cardservice filed a notice of lien against Grannan to enforce a money judgment in the amount of $6,808.34 pursuant to Cal. Code Civ. Proc. § 708.410 *et seq*. Dkt. No. 26. After the parties filed their motion for final approval of the Settlement Agreement, Cardservice filed what purports to be an objection to the settlement, urging either that the settlement be rejected or, alternatively, that this court direct Grannan's incentive payment to be paid directly to Cardservice . See Dkt. No. 45 at 3-4. Plaintiff argues that because Cardservice is not a class member, it cannot object to the settlement. In addition, plaintiff challenges the sufficiency of Cardservice's notice of lien. Dkt. No. 50, p. 2.

1. *Standing to Object to the Settlement*

Under Fed. R. Civ. P. 23(e)(5), only class members have standing to object to a settlement on behalf of the class. San Francisco NAACP v. San Francisco Unified School District, 59 F. Supp. 2d 1021, 1033 (N. D. Cal. 1999). Cardservice is not a class member. Therefore, Cardservice has no standing to object to the Settlement Agreement based on its filing of a notice of lien, and its request to set aside the Settlement Agreement must be denied.

2. *Application of Cal. Code Civ. Proc. § 708.410 et seq.*

12

This court has authority to enforce a judgment lien filed pursuant to Cal. Code Civ. Proc. § 708.410. See Paul Revere Ins. Group v. United States, 500 F.3d 957, 960 (9th Cir. Cal. 2007). Fed. R. Civ. P. 69(a), which governs execution in federal courts, requires that procedures for execution of judgment "must accord with the procedure of the state where the court is located." California law provides for the enforcement of a judgment lien, permitting a judgment creditor to (1) file notice of the lien in a pending proceeding; and (2) move for enforcement of the lien against the judgment debtor's interest in the judgment of the pending proceeding. Cal. Code Civ. Proc. §§ 708.440-708.470. A judgment creditor may also seek satisfaction from a settlement agreement. See Flores v. Jewels Marketing, 2010 U.S. Dist. LEXIS 46601 (E.D. Cal. April 12, 2010).

Here, Cardservice, the judgment creditor, filed its notice of lien and a certified copy of its money judgment in this action on July 19, 2011. Dkt. No. 26. Plaintiff has questioned whether Cardservice actually filed a certified copy of the judgment, as required by Cal. Code Civ. Proc. § 708.410. Dkt. 50, p. 2. Upon review of the case file, the court finds that Cardservice's filing was a certified copy of the judgment lien and is sufficient to create a lien under the California statute.

Once a valid lien has been created, the judgment debtor, Patrick Grannan, may not recover a judgment or enter into a settlement unless he (1) obtains written consent from Cardservice; or (2) moves for and receives relief from the judgment lien by this court. Cal. Code Civ. Proc. § 708.440. When ruling on a motion for such relief, the court has discretion to impose such terms and conditions as it deems necessary. Id. When the judgment debtor is entitled to money or property in the pending action, either the judgment creditor or some other party must move for the court to apply the debtor's interest in satisfaction of the lien. Cal. Code Civ. Proc. § 708.470.

In this case, Cardservice did create a valid lien, but neither party has complied with the statute's provisions for seeking either satisfaction of or exemption from the lien. Instead of noticing a motion for an order that Grannan's incentive payment be applied toward the satisfaction of its lien, Cardservice filed the invalid objection to the Agreement. Additionally, Grannan has not moved for an order under § 708.440 or for a claim of exemption under § 708.450. Therefore, the court will act within the discretion afforded it by §§ 708.440 and 708.470 and decide this matter in a way that is reasonable to both sides. Cardservice has created a valid lien, which should entitle it to some

satisfaction from Grannan's incentive payment. However, Grannan has performed a public service in bringing this action, which provided compensation to a substantial number of class members aggrieved by the violation of a statute who otherwise would have gone uncompensated. Accordingly, it is both fair and reasonable for Grannan to receive $2,500.00 of his incentive payment, and for Cardservice to receive $2,500.00 of the incentive payment in partial satisfaction of its lien.

Therefore, in accordance with Cal. Code Civ. Proc. § 708.470, the court hereby ORDERS that $2,500.00 of Patrick Grannan's incentive payment under the Settlement Agreement be applied to the satisfaction of the lien held by Cardservice.

### IV. MOTION FOR ATTORNEY'S FEES

Also before the court is Class Counsel's Motion for Award of Attorney's Fees and Costs (Dkt. No. 35). The motion seeks, and Alliant has not opposed paying, 25% or $250,000 of the Settlement Fund, as well as $121,840.25 in costs and fees incurred by Gilardi & Co., LLC, the Claims Administrator, $14,316.50 as costs for hiring an Information Technology consultant, and $1,327.31 in litigation costs incurred by Class counsel. In total, the motion requests $387,484.06 in costs and fees. See Dkt. No. 52, P. 2. Class Counsel contends that the fee request is appropriate under both lodestar and percentage-of-the-find analyses. The court concurs.

A. Lodestar Comparison

The motion for attorney's fees is supported by a declaration, detailed time records, and a supplemental declaration establishing that class counsel spent 265.40 hours on this litigation, and detailing the actual expenses incurred. Dkt. Nos. 35, 52. The lodestar amount during this period for attorney time calculated at prevailing market rates is $169,528.00. The market rates utilized, the hours expended, and the expenses incurred appear reasonable and appropriate. Class Counsel's request for 25% of the fund represents a multiplier of 1.47. In class action cases, where counsel works on a contingency basis and risks receiving nothing for the time and effort expended, it is reasonable to apply a multiplier to the lodestar value. Here, a multiplier of 1.47 is well within the range of permissible multiples. See Vizcaino v. Microsoft Corp., 290 F.3d 1043, 1050 n. 4-5 (9th Cir. 2002); Steiner v. Am. Broad. Co., 248 Fed. Appx. 780, 783 (9th Cir. 2007) (awarding a fee of

14

25% of the fund, which made the effective multiplier 6.85). Therefore, Class Counsel's requested fee is reasonable and fair in light of the complexity of the case and time spent by counsel.

### B. Percentage-of-the-Fund Comparison

The reasonableness of the requested fee may also be evaluated through a percentage-of-the-fund analysis. Ninth Circuit courts "typically calculate 25% of the fund as the 'benchmark' for a reasonable fee award." In re Bluetooth Headset Products Liability Litig. __ F.3d __, 2011 WL 3632604 (9th Cir. Aug. 19, 2011). Here, Class Counsel has requested the benchmark amount as a fee award, Alliant has not opposed, and this court sees no reason not to award it. If the fee award and costs are granted as requested, $612,515.94 of the Settlement Fund will be available for distribution to the class members. Since each class member will receive an equal share of the Fund (with the exception of Grannan, who will receive a $5,000 incentive payment out of the Fund), the payout to each class member will be approximately $306.

In this action, plaintiffs have not alleged that any of the class members suffered any actual damages. Instead, they only seek vindication of their statutory rights. It is true that the expected payout to each class member will be less than what each is entitled to recover under TCPA, but it nonetheless represents a windfall to the class members that sufficiently compensates them for their troubles. In light of the length, novelty and complexity of the litigation, the quality of representation, the risk of nonpayment, the time and labor required, the benefits obtained for the class through the settlement, multipliers applied in similar cases, and the comparisons to a lodestar and percentage-of-the-fund analysis, the court finds that an award of $137,484.06 in costs and $250,000.00 in attorney's fees is reasonable.

The motion for an award of attorney's fees and costs is GRANTED. The court awards (1) fees and costs for the Claims Administrator in the amount of $121,840.25; (2) the cost of hiring an IT consultant in the amount of $14,316.50; (3) litigation costs in the amount of $1,327.31; and (4) attorney's fees of $250,000.00. The award shall be paid in accordance with the terms of the Settlement Agreement.

**CONCLUSION**

After consideration of these factors, the Court GRANTS final approval of the Amended Settlement and finds that it is fair, reasonable and adequate, was determined without fraud or collusion, and is in the best interests of the Settlement Class. The motion for final approval is now GRANTED. Based on the foregoing, it is further ORDERED that:

1. Half of class representative Patrick Grannan's incentive payment of $5,000, or $2,500, shall be applied to the satisfaction of the lien held by third-party Cardservice International. The Clerk of the Court shall endorse the judgment in this action with a statement of the existence of a lien and the time it was created, pursuant to Cal. Code Civ. Proc. § 708.460.

2. Class counsel shall be awarded costs and fees in the amount of $387,484.06. Of that amount, $250,000.00 shall be attorney's fees, $1,327.31 in litigation costs, $121,840.25 in costs and fees to the Claims Administrator, and $143,316.50 for the Information Technology consultant.

**IT IS SO ORDERED.**

Dated: January 24, 2012

_____
HOWARD R. LLOYD
UNITED STATES MAGISTRATE JUDGE

**C10-02803 HRL Notice will be electronically mailed to:**

Douglas James Campion          doug@djcampion.com
Bryce Douglas McCloud          bdm@wsblaw.net

**Counsel are responsible for distributing copies of this document to co-counsel who have not registered for e-filing under the court's CM/ECF program.**